IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TIMOTHY R. COMER,             )
                              )
            Plaintiff,        )
                              )
v.                            )   1:16CV199
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner of Social )
Security Administration,      )
                              )
            Defendant.        )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Timothy R. Comer, brought this action to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). The Court has before it the certified administrative record and cross-motions for judgment. (Docket Entries 6, 8, 10.) For the reasons set forth below, the Court recommends that Defendant's motion (Docket Entry 10) be granted, Plaintiff's motion (Docket Entry 8) be denied, and that the final decision of the Commissioner be upheld.

## I. PROCEDURAL HISTORY

In December 2013, Plaintiff filed an application for DIB alleging a disability onset date of April 1, 2009. (Tr. 160-66.)[1] Plaintiff's claim was denied initially and upon reconsideration. (Tr. 94, 110.) Plaintiff thereafter requested a hearing before an Administrative Law Judge

---

[1] Transcript citations refer to the administrative record which was filed with Defendant's Answer. (Docket Entry 6.)

("ALJ"). (Tr. 131-32.) A hearing was held on September 8, 2015. (Tr. 26-55.) The ALJ issued an unfavorable decision on September 17, 2015. (Tr. 11-30.) This decision became the final administrative decision after the Appeals Council declined review. (Tr. 1-5.) Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[It] 'consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *Richardson*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

Thus, "[a] claimant for disability benefits bears the burden of proving a disability," *Hall*

*v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981), and in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]'" *Id.* (quoting 42 U.S.C. § 423(d)(1)(A)). "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." *Id.* "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." *Id.* (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ("RFC") to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999) (citing 20 C.F.R. § 404.1520). The law concerning these five steps is well-established. *See, e.g., Mastro v. Apfel*, 270 F.3d 171, 177-180 (4th Cir. 2001); *Hall*, 658 F.2d at 264-65.

### III. THE ALJ's DECISION

The ALJ followed the well-established five-step sequential analysis to ascertain whether Plaintiff is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright*, 174 F.3d at 475

3

n.2. In rendering his disability determination, the ALJ made the following findings later adopted by Defendant:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of April 1, 2009 through his date last insured of December 31, 2014 (20 CFR 404.1571 *et seq.*).

   . . . .

3. Through the date last insured, the claimant had the following severe impairments: right eye blindness; right lateral epicondylitis; post-traumatic stress disorder (PTSD); anxiety; depression; and alcohol abuse, in remission (20 CFR 404.1520(c)).

   . . . .

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

   . . . .

5. After careful consideration of the entire record, [the ALJ] f[ound] that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could occasionally climb ladders, ropes, or scaffolds; occasionally crawl; frequently climb ramps and stairs; and frequently balance, kneel, or crouch. He was limited to occupations only requiring monocular vision and no peripheral vision on the right due to right eye blindness. Work was limited to simple and routine tasks with the ability to be off task up to 5% of the workday due to moderately impaired attention and concentration in a low stress job defined as having no fixed production quotas; only occasional changes in the work setting; occasional interaction with the public and coworkers; and occasional over the shoulder supervision.

(Tr. 16-19.) In light of the above findings regarding Plaintiff's RFC, the ALJ determined that Plaintiff was unable to perform his past relevant work as an

4

infantryman, convenience store manager, accounting clerk or security guard. (Tr. 24.) Based upon Plaintiff's age, education, work experience, and his RFC, the ALJ concluded "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* (citing 20 C.F.R. §§ 404.1569, 404.1569(a)). Accordingly, the ALJ concluded that Plaintiff was not disabled. (Tr. 26.)

## IV. DISCUSSION

Plaintiff raises two issues on appeal. First, Plaintiff contends that the ALJ inadequately evaluated the Plaintiff's VA ("Veteran Affairs") disability rating. (Docket Entry 9 at 4-8.) Second, Plaintiff contends that the ALJ's analysis of Plaintiff's treating psychiatrist's opinion is inadequate because the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion. (*Id.* at 9-14). For the reasons stated herein, the undersigned concludes that substantial evidence supports the ALJ's determination to give little weight to the Plaintiff's VA disability rating and Dr. Tracy Price's opinion.

### A. The ALJ's Decision to Accord Little Weight to Plaintiff's VA Disability Rating

Plaintiff contends that the ALJ inadequately evaluated the disability determination of the VA. (Docket Entry 9 at 4-8.) More specifically, the VA issued Plaintiff a VA disability rating finding that his PTSD, due to "exposure to Gulf War environmental hazard," was evaluated as 70 percent disabling and his "headaches secondary to right eye blindness" were evaluated as 30 percent disabling. (Tr. 502.) Plaintiff notes that "[a]n evaluation of 70 percent is assigned because the evidence shows panic attacks, irritability, impaired sleeping, obsessive behavior and an inability to establish and maintain effective relationships that result in occupational and social impairment, with deficiencies in most areas, such as work, school,

5

family relations, judgment, thinking or mood." (Docket Entry 9 at 6; Tr. 515.) Plaintiff contends that "'[t]he ALJ's conclusory remark that the VA disability rating is 'inconsistent with the overall evidence of record' also fails to satisfy [*Bird v. Commissioner*, 699 F.3d 337, 343 (4th Cir. 2012)], because the ALJ does not point to specific pieces of evidence which contradict the VA's disability determination.'" (Docket Entry 9 at 5) (internal citation omitted). Consequently, evaluating the strength of Plaintiff's argument requires an understanding of *Bird*, 699 F.3d at 343.

In *Bird*, the Fourth Circuit considered "the precise weight that the SSA must afford to a VA disability rating." *Id.* at 343. In addressing this question, the Fourth Circuit noted that, "the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Id.* at 343. It reasoned further that "[b]oth programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims." *Id.* (quotations omitted). The Fourth Circuit concluded that "[b]ecause the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.* Thus, "in making a disability determination, the SSA [Social Security Administration] must give substantial weight to a VA disability rating." *Id.* "However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will

6

vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.*

Here, with respect to his disability determination the ALJ stated the following:

> I considered the VA rating decision in accordance with SSR 06-03p. Little weight is given to said decision as it is inconsistent with the overall evidence of record. Because the VA's ratings are based upon standards not entirely relevant to a disability determination made by the Social Security Administration, great weight cannot be given.

(Tr. 23.) (internal citations omitted).

The ALJ's statement that VA disability ratings cannot be given great weight because they "are based upon standards not entirely relevant to a disability determination made by the Social Security Administration" is inconsistent with *Bird*. (Tr. 23.) In *Bird*, the Fourth Circuit expressly states that the methods of evaluation and purpose of both programs "are closely related . . . [and] highly relevant to the disability determination of the other agency." *Bird*, 699 F.3d at 343. Thus, this portion of the ALJ's determination is erroneous. *See Thomas v. Colvin*, No. 4:12CV179, 2013 WL 5962929, at *9 (E.D. Va. Nov. 6, 2013) (internal citation omitted) (reasoning that the Fourth Circuit has now made it apparent that the ALJ must give the VA's disability determination substantial weight or explain the reason for giving it less weight because "[t]he reasons cited by the Commissioner in [the plaintiff's] case—different rules and different standards—would apply to every case and thus cannot be relied upon to avoid scrutiny of the VA decision under *Bird's* presumptive standard").

However, the Court concludes the ALJ's decision to accord little weight to the VA disability rating because it "is inconsistent with the overall evidence of record" is supported

7

by substantial evidence. (Tr. 23.) In support of the ALJ's determination that the VA disability rating is inconsistent with the record, elsewhere in the decision, the ALJ states that

> [t]he claimant received inpatient psychiatric treatment during the period of May 23-27, 2011, due to depression and suicidal ideation with a plan after an argument with his wife .... The claimant was treated with medications and reported no symptoms of mental distress. He appropriately interacted with peers, staff, and roommate; and, he was not a management problem in the unit. At discharge, his mental status examination showed he was alert and oriented; maintained good eye contact; mood and affect were euthymic; impulse control, judgment, and insight were good; and, there was no evidence of thought disorder. He was advised to continue his medications as prescribed and follow-up with outpatient mental health.
>
> Subsequent mental status examinations were typically unchanged, demonstrating essentially normal findings. He had calm, pleasant moods with congruent affect; normal speech; no involuntary movements; fair to good insight; and good impulse control and judgment. His appearance was normal; memory was intact; attention/concentration was good; eye contact was good; and, signs of hallucinations, thought disorder, psychomotor slowing/agitation, paranoid ideations, or suicidal/homicidal ideations were not evident. He was in no acute distress, alert, and oriented; he typically denied side effects of medications; he posed no risk to self or others; and depression screens were mostly negative. Actually, the claimant often reported he was stable with help from his medications (*i.e.,* Venlafaxine, Aripiprazole, Quetiapine, Clonazepam) and therapy, as he had no hallucinations, suicidal/homicidal ideations, or bipolar symptoms; nightmares/flashbacks were only "off and on"; and feelings of depression were denied. He reported improved energy levels and motivation; better relationships with his wife and son; and being active with his youth ministry at church. Hence, he requested to continue on his current psychotropic regimen, to which his provider agreed would maintain his stabilization and prevent further deterioration and/or relapses.

(Tr. 21-22.) (internal citations omitted).

The ALJ also addressed Plaintiff's headaches secondary to right eye blindness. The ALJ stated that "physical examinations through the date last insured frequently revealed he was in no acute distress . . . [i]n fact, the claimant typically denied eye pain or vision difficulties." (Tr. 20.) Subsequently, "examinations of the right eye remained normal despite

8

the fact the claimant sporadically reported his loss of vision caused balance problems resulting in frequent falls and running into things." (*Id.*) (internal citations omitted). "Thereafter, examinations continuously demonstrated normal findings regarding the claimant's right eye and right elbow. In fact, he still denied joint and/or muscle pain as well as any problems related to right eye blindness." (Tr. 21.)

Furthermore, upon review of the record the undersigned concludes that substantial evidence supports the ALJ's findings. With respect to Plaintiff's PTSD, the majority of the objective medical evidence indicates non-severe mental status examinations showing no signs of hallucinations, thought disorder, paranoid ideations, or suicidal/homicidal ideations and physical examinations showing normal affect and no acute distress. (Tr. 275, 277, 284, 383-84, 393, 412, 431, 442, 451, 462, 486, 530, 536, 550, 563, 575-76, 583, 610). Likewise, notwithstanding a few examinations, the vast majority of Plaintiff's physical examinations indicate that Plaintiff denied suffering from headaches. (Tr. 275, 279, 294, 296, 307, 310, 313, 374, 522, 628-29, 632, 634; *but see* 281, 371, 642.) Thus, the Court concludes that the ALJ properly detailed his reasons for according little weight to the VA disability rating and the ALJ's decision is supported by substantial evidence. *McDonald v. Colvin*, No. 3:15-CV-00598-MOC, 2016 WL 4084040, at *7 (W.D.N.C. July 29, 2016) (finding that the ALJ satisfied the requirements articulated in *Bird* notwithstanding the ALJ's erroneous statement that the VA disability rating is of "little probative value," because the ALJ ultimately determined that the VA disability rating was "simply not supported by the evidence of record"); *Bennett v. Colvin*, No. 5:13-CV-871-D, 2015 WL 354170, at *6 (E.D.N.C. Jan. 27, 2015) ("conclud[ing] that the ALJ's assessment of the VA's decision is supported by substantial evidence and based on

9

proper legal standards" because the ALJ discussed why the VA's decision determining that Plaintiff's headaches and back pain were disabling was inconsistent with the objective medical evidence and assessments conducted by nonexamining state agency consultants); *Owens v. Colvin*, No. 0:14-CV-2149 DCN, 2015 WL 2399781, at *12 (D.S.C. May 19, 2015) (finding that the ALJ's reasoning for according only some weight to the VA disability ratings in part because "clinical examinations and objective test results have not revealed the presence of any acute or chronic abnormalities that would be severe enough to prevent the [Plaintiff] from performing at least some sedentary, low stress, low social contact work activity" was supported by substantial evidence).

### B. The ALJ's Decision to Accord Little Weight to Dr. Tracy Price's Opinion is Supported by Substantial Evidence

Plaintiff contends that the ALJ inadequately evaluated the medical opinion of Plaintiff's treating psychiatrist, Dr. Price. (Docket Entry 9 at 8-14). More specifically, Plaintiff contends that "the ALJ . . . failed to provide an adequate explanation for why he assigned little weight to Dr. Price's medical opinion" by only making conclusory statements for discounting her opinion. (Docket Entry 9 at 9.) The "treating physician rule," 20 C.F.R. § 404.1527(c)(2), generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence . . . ." 20 C.F.R. § 404.1527(c)(2).[2] An ALJ refusing

---

[2] SSR 96–2p provides that "[c]ontrolling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). However, where "a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" *Id.*

10

to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. 20 C.F.R § 404.1527(c)(2)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. 20 C.F.R § 404.1527(c)(2)-(6).

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings as well as consistent with the other substantial evidence in the case record. 20 C.F.R § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); *accord Mastro*, 270 F.3d at 178.

"Social Security Ruling 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). The Fourth Circuit has held that "'a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,'" including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" *Id.* at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

11

Here, Dr. Price provided a medical source statement regarding Plaintiff's mental abilities.[3] (Tr. 602.) The ALJ expressly noted Dr. Price's findings:

> [Dr. Price] opined that [Plaintiff] had mild restrictions in activities of daily living; marked difficulty in social functioning; deficiencies of concentration, persistence, pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); repeated episodes of deterioration or decompensation in work or work-like setting which cause withdrawal or exacerbation of symptoms; but he was not unable to function independently outside the area of his home. He was moderately impaired in his ability to maintain attention and concentration for extended periods; sustain ordinary work routine; make simple work-related decisions; accept instructions and respond appropriately to criticism; and set realistic goals or make plans independently. The claimant was markedly impaired in the ability to perform activities within a schedule or maintain regular attendance; work in coordination with, or proximity with, others; and respond appropriately to changes in the work setting. He was further extremely impaired in his ability to complete a normal workday or workweek without interruptions; interact appropriately with the public; and travel in unfamiliar places or use public transportation.

(Tr. 23, 602-03.) The ALJ gave little weight to Dr. Price's opinions because "they [were] too restrictive and not consistent with her own treatment records or the overall evidence of record." (Tr. 23.) Plaintiff contends that the ALJ's analysis is conclusory and fails to be build an accurate and logical bridge from the evidence to his conclusions. (Docket Entry 9 at 9.) The Court finds that it can follow the ALJ's reasoning for according little weight to Dr. Price's decision. First, the ALJ details Dr. Price's medical source statement findings. (Tr. 23.) Next, the ALJ states the Dr. Price's treatment notes are inconsistent with her medical source

---

[3] Dr. Price's medical source statement is a pre-printed form with check boxes to indicate the severity of the person's impairment on a particular function. Pre-printed forms that require little in the way of explanation are generally not looked upon favorably. *See* 20 C.F.R. § 404.1527(c)(3) (stating that the better explanation a source provides for an opinion, the more weight the Commissioner gives that opinion); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

statement. (*Id.*) In addition, the ALJ cities to portions of the record that include Dr. Price's treatment notes when he states that Plaintiff's "mental status examinations were typically unchanged, demonstrating essentially normal findings . . . fair to good insight; and good impulse control and judgment. . . . His appearance was normal; memory was intact; attention/concentration was good . . . signs of hallucinations, . . . paranoid ideations, or suicidal/homicidal ideations were not evident." (T. 22.)

A review of Dr. Price's examinations typically indicated that Plaintiff was alert, oriented to place, person and time. (Tr. 479, 610, 619, 625, 661, 670.) Plaintiff had fair eye contact. Normal rate, tone and volume of speech. (Tr. 479, 610, 619, 625, 661, 670.) Dr. Price noted that Plaintiff did not have any auditory hallucinations, thought disorders, suicidal ideations, visual hallucinations, paranoid ideations or homicidal ideations. (Tr. 479, 610, 619, 625, 661, 670.) His mood ranged from: "alright," "kind of down," "a little more irritable," "anxious, depressed a lot," "up and down, . . . mostly down," "about the same up, . . . up, down, . . . all around," "still depressed and anxious." (Tr. 479, 610, 619, 625, 661, 670). His affect was typically congruent to his mood. (Tr. 479, 610, 619, 625, 661, 670). In October 2014, Plaintiff told Dr. Price that while Plaintiff believed his anxiety level had not decreased due to therapy sessions focused on past military combat, "he notes that increased dosage of Clonazeparn [was] very helpful." (Tr. 616.) Plaintiff also stated that his "[e]nergy level . . . improved on current dosage of Fluoxetine, [which has help Plaintiff become] more motivated to do tasks." (Tr. 616.) In January 2015, Plaintiff told Dr. Price that "Clonazeparn helps quite a lot with his anxiety; states the anxiety comes and goes depending on the situation." (Tr. 608.) Plaintiff noted that "he has had some depression but not feeling hopeless at all. . . . He continues to

13

see individual therapist at outside clinic and says this helps a great deal." (*Id.*) In April 2015, Dr. Price noted that, according to Plaintiff, "he continue[d] to have some depression though feels Duloxetine may be helping slightly since it was started at last appointment." (Tr. 659.) The ALJ summarized these findings in his decision creating a logical bridge between the evidence and his conclusions. *Jenkins v. Colvin*, No. 5:15-CV-00010-FDW, 2016 WL 4373701, at *6–7 (W.D.N.C. Aug. 12, 2016) (concluding that the ALJ's analysis including his findings that the plaintiff's subjective complaints were inconsistent with the medical evidence, which indicated that the plaintiff had no "psychiatric hospitalizations and there were multiple reports of her conditions being either level or controlled with medication," created a logical bridge between the evidence and the ALJ's decision); *Wilkerson v. Colvin*, No. 1:15CV00944, 2016 WL 3264311, at *5 (M.D.N.C. June 14, 2016) (unpublished) (finding that "the ALJ's decision sufficiently show[ed] that he considered Plaintiff's ability to 'stay on task,' which . . . created 'an accurate and logical bridge,' between the record evidence and his conclusion that Plaintiff can perform [simple routine and repetitive tasks], notwithstanding moderate limitation in [concentration persistence or pace]") (internal citations omitted); *Fitzgerald v. Colvin*, No. 1:13-CV-45, 2014 WL 3866133, at *3 (M.D.N.C. Aug. 6, 2014) (concluding that although the ALJ did not discuss the plaintiff's mother's testimony regarding the plaintiff's inability to stay on task while working for the family business, the court found that "the ALJ did discuss other aspects of [the plaintiff's mother's] testimony and provided a fair summary of her testimony" creating an logical bridge between the evidence and her conclusions).

In addition, the Court concludes that the ALJ correctly determined that Dr. Price's opinion is not supported by substantial evidence. As stated above the majority of the objective

14

medical evidence shows normal and non-severe findings. (Tr. 275, 277, 284, 383-84, 393, 412, 431, 442, 451, 462, 486, 530, 536, 550, 563, 575-76, 583, 610). In his brief, Plaintiff details the history of the impact of his mental impairments on his ability to sleep, interact with family, friends and others, and his overall mental state. (Docket Entry 9 at 10-14.) Plaintiff states that in 2011, he received regular mental health treatment after being hospitalized due to suicidal plans to shoot himself. (*Id.* at 10) Additionally, Plaintiff states that while he was emotionally stable, he still suffered from intrusive thoughts from past combat traumas and socially isolated himself despite medication and counseling treatment. (*Id.*) Thereafter, Plaintiff notes that his depression was under better control, but that with regards to his anxiety, he woke up frequently at night, felt he needed to be guarded and checked locks after his son. (*Id.*) However, these statements are notations of Plaintiff's subjective complaints. A doctor's observations of Plaintiff' subjective complaints are not sufficient to "'transform[] [their] observations into 'clinical evidence.' If this were true, it would completely vitiate any notion of objective clinical medical evidence. There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain.'" *See Craig*, 76 F.3d at 590; *see also Miller v. Astrue*, No. CIV.A. 8:10-1142-HMH, 2011 WL 1576203, at *17 (D.S.C. Apr. 7, 2011), *report and recommendation adopted sub nom. Miller v. Comm'r, Soc. Sec. Admin.*, No. CA 8:10-1142-HMH-JDA, 2011 WL 1561058 (D.S.C. Apr. 26, 2011) (upholding the ALJ's decision to discount the doctor's decision, in part, because it was "based on the [p]laintiff's subjective complaints and inconsistent with examinations, objective findings, progress notes, evidence of malingering, . . . and conservative treatment"). Thus, the ALJ's analysis created a logical

15

Case 1:16-cv-00199-CCE-JLW   Document 12   Filed 12/08/16   Page 15 of 16

bridge between his decision to accord little weight to Dr. Price's opinion and the evidence of record. Furthermore, the ALJ's decision is supported by substantial evidence.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 8) be **DENIED**, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 10) be **GRANTED**, and that the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

December 8, 2016
Durham, North Carolina